1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW KATZ,

                       Plaintiff,

     v.

DAVID KATZ,

                  Defendant.

CASE NO. C22-5040JLR

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

## I.  INTRODUCTION

Before the court is Defendant David Katz's motion for summary judgment.  (Mot. (Dkt. # 28); Reply (Dkt. # 40).)  *Pro se* Plaintiff Matthew Katz opposes David's[1] motion. (Resp. (Dkt. # 32).)  The court has considered the motion, all materials submitted in support of and in opposition to the motion, the relevant portions of the record, and the

---

[1] For ease of reference, the court refers to the members of the Katz family by their first names.  In doing so, the court means no disrespect.

1  governing law.  Being fully advised,[2] the court GRANTS in part and DENIES in part

2  David's motion for summary judgment and ORDERS supplemental briefing.

3  ## II.       BACKGROUND

4      The court recounts the factual and procedural background of this case below.

5  **A.      Factual Background**

6      This case arises from a $50,000 loan that David made to Matthew in January 2012.

7  (D. Katz Decl. (Dkt. # 29) ¶ 11; 1st M. Katz Aff. (Dkt. # 33) ¶ 5.)  Matthew is a

8  92-year-old retired music manager and producer.  (D. Katz Decl. ¶ 3.)  David is

9  Matthew's nephew; he is the son of Matthew's late twin brother, Bernard Katz.  (1st

10  M. Katz Aff. ¶ 4.)  Matthew assured David that he expected to repay the loan later in

11  2012 or in 2013, after he sold a home he owned in Seattle, Washington.  (*Id.* ¶ 7; *see*

12  D. Katz Decl. ¶ 11, Ex. B (email from Matthew, stating he would "return the full amount

13  when the Seattle house closes escrow").)  After the home sold in May 2013, however,

14  Matthew did not repay the loan because he was experiencing financial distress.  (1st

15  M. Katz Aff. ¶ 10; D. Katz Decl. ¶ 14.)

16      Concerned about repayment, David reached out to Matthew in August 2013, and

17  again in 2014 and 2015, and asked Matthew to secure the loan against real estate that

18  Matthew owned.  (1st M. Katz Aff. ¶¶ 10, 12; D. Katz Decl. ¶ 15.)  In 2016, Matthew

19  agreed to collateralize the loan against property he owned at 5621 Sunrise Beach Rd. NW

20

21      [2] Neither party requests oral argument on the motion (*see* Mot. at 1; Resp. at 1), and the

22  concludes that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

in Olympia, Washington (the "Property").  (1st M. Katz Aff. ¶ 13.)  The Property is next door to Matthew's home at 5619 Sunrise Beach Rd. NW.  (*See* Am. Compl. ¶ 6.[3])  David recalls that Matthew had expressed to him that he wanted to transfer the Property to David and that Matthew was attempting to spend down his estate in order to qualify for a Veterans Administration ("VA") loan.  (D. Katz Decl. ¶¶ 18-19.)  Matthew, however, states that he meant only to grant David a lien on the Property, and that he intended to use the VA loan to repair the Property rather than to repay David.  (1st M. Katz Aff. ¶ 13; 2d M. Katz Aff. (Dkt. # 34) ¶ 8.)  Although Matthew asserts that the Property is currently worth $1,200,000—much more than the $50,000 loan amount—the Thurston County Office of the Assessor assessed the market value of the property at $268,700 in 2022. (1st M. Katz Aff. ¶ 17; 2d D. Katz Aff. (Dkt. # 41) ¶ 10, Ex. A (screenshot of the Thurston County Office of the Assessor's website, showing the market value of the land is $267,600 and the market value of the buildings on the land is $1,100).)  Matthew further asserts that he had always intended to leave the Property and his home at 5619 Sunrise Beach Rd. to his two daughters, Deirdre Richards and Darah Natascha ("Tascha") Katz.  (1st M. Katz Aff. ¶ 20; Richards Aff. (Dkt. # 36) ¶ 7 (corroborating Matthew's assertion); T. Katz Aff. (Dkt. # 37) ¶ 7 (same).)

---

[3] Because Matthew verified his amended complaint, the court may cite to its factual assertions as evidence in opposition to the motion for summary judgment.  *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (a verified complaint is admissible to oppose summary judgment); *id.* n.10 (pleading counts as verified if the drafter states under penalty of perjury that the contents are true and correct); (*see* Am. Compl. at 18 (so stating)).

1    Matthew remembers that he told his attorney, Alan J. Wertjes, to draft a "deed" to

2    provide David a lien on the Property as security for the loan; he says that he now

3    understands he should have asked Mr. Wertjes to draft a deed of trust instead.  (*Id.* ¶ 14.)

4    In any event, Mr. Wertjes drafted a quit claim deed and real estate excise tax affidavit

5    ("REETA").  (Whalen Decl. (Dkt. # 30) ¶ 3, Ex. A ("Wertjes Dep.") at 9:24-10:21;

6    Wertjes Dep., Ex. 2 ("Quit Claim Deed"); *id.*, Ex. 3 ("REETA").)  The Quit Claim Deed

7    states that Matthew "convey[ed] and quit claim[ed]" to David all of his "right, title and

8    interest" in the Property "for good and valuable consideration."  (Quit Claim Deed at 1.)

9    The REETA claimed an exemption from real estate taxes under WAC 458-61A-201

10   (governing gifts of real property) and specified that the reason for the exemption was

11   "Gift."  (REETA at 1.)  Matthew signed the Quit Claim Deed in the presence of a notary

12   in May 2016; he also signed the REETA.  (Quit Claim Deed at 1-2; REETA at 1-2.)  On

13   June 1, 2016, Mr. Wertjes's office recorded the Quit Claim Deed and filed the REETA

14   with the Thurston County Treasurer and Auditor.  (Wertjes Dep. at 11:7-10; *see* Quit

15   Claim Deed at 1; REETA at 1.)  In his deposition, Mr. Wertjes declined to answer

16   questions about who directed him to draft the Quit Claim Deed and REETA or about his

17   discussions with Matthew, citing the Rules of Professional Responsibility governing

18   attorneys.  (*See, e.g.*, Wertjes Dep. at 10:22-11:6, 16:14-17.)  He acknowledged,

19   however, that he did not have any conversations with David, that David "never directed

20   [him] to do any legal work or make any corrections to any documents," and that he

21   received no information from David.  (*Id.* at 13:20-14:5, 18:8-13.)  After executing the

22

1   Quit Claim Deed, Matthew did not make any further payments on the $50,000 loan.

2   (D. Katz Decl. ¶ 23.)

3       In 2021, Matthew asked David to return the Property to him.  (*Id.* ¶ 24; *see also*

4   Am. Compl. ¶ 16.)  Matthew and David agreed that they "would enter into a written

5   contract whereby [David] would reconvey title to the [Property] back to [Matthew]

6   provided that [Matthew] put in writing a promise for his estate to and a directive that his

7   estate would pay to [David] the loaned sum of $50,000 . . . plus an additional $50,000."

8   (Am. Compl. ¶ 16; *see also* D. Katz Decl. ¶¶ 25-26 (stating Matthew had promised him

9   an additional $50,000 "for handling his music rights and eventually administering his

10  estate upon his passing"); 1st M. Katz Aff. ¶ 22; 2d M. Katz Aff. ¶ 7.)  In August 2021,

11  David drafted a letter for Matthew's signature memorializing their agreement.  (D. Katz

12  Decl. ¶ 26, Ex. F.)  According to Matthew, he tried multiple times to call David to tell

13  him that he agreed to the terms, and he emailed to David the executed copy of the letter

14  David drafted.  (Am. Compl. ¶ 16; 2d M. Katz Aff. ¶ 7.[4])  When Matthew finally reached

15  David on the phone, David stated that "he did not wish to and '[could] not talk with

16  [Matthew].'"  (Am. Compl. ¶ 16; *see also* 2d M. Katz Aff. ¶ 7.)  According to David,

17  however, Matthew never signed the letter and instead "simply replied that he was

18  uncomfortable with the language."  (D. Katz Decl. ¶ 27.)

19      Matthew has been diagnosed with an aortic aneurysm and relies on assistance

20  from the VA, "other local charities," and, since August 2022, his roommate Mark Olla,

21

22      [4] Matthew did not, however, submit the executed agreement or his email to David as evidence in support of his opposition to David's motion for summary judgment.

1    who assists him with cooking and household functions.  (2d M. Katz Aff. ¶ 10; Olla Aff.

2    (Dkt. # 35) ¶ 10.)  Matthew has reimbursed David for mortgage payments on the Property

3    and asserts that he has been paying real estate taxes for the Property.  (Am. Compl. ¶ 18;

4    Supp. M. Katz Aff. (Dkt. # 39) ¶ 6, Ex. 2 (2021 bank statements, showing payments to

5    David).)

6    **B.    Procedural Background**

7           Matthew filed his initial verified complaint in this matter on January 20, 2022,

8    along with an application to proceed *in forma pauperis* ("IFP").  (IFP App. (Dkt. # 1).)

9    On February 2, 2022, the court granted Matthew's IFP application and filed his complaint

10   on the docket.  (IFP Order (Dkt. # 4); Compl. (Dkt. # 5).)  In his original complaint,

11   Matthew brought claims against David and four unnamed Defendants (the "Doe

12   Defendants") for (1) a declaratory judgment that the purported secured loan contract

13   between Matthew and David is voidable as fraudulently induced or void as an

14   unconscionable contract; (2) fraud; (3) quiet title; (4) breach of oral contract;

15   (5) intentional interference with prospective economic advantage; (6) intentional

16   infliction of emotional distress; and (7) elder abuse.  (Compl. ¶¶ 19-38.)  He asked the

17   court to restore title to the Property to him and sought damages of $1,500,000 for

18   infliction of emotional distress and elder abuse.  (*Id.* at 12-13.)  On March 18, 2022,

19   David answered the complaint and alleged a counterclaim for quiet title or, in the

20   alternative, repayment of the $50,000 he loaned to Matthew.  (Ans. (Dkt. # 10) at 9-10.)

21          On May 3, 2022, the court granted Matthew's motion for leave to file an amended

22   complaint to add factual allegations based on his discussions with two potential

witnesses.  (5/3/22 Order (Dkt. # 15); *see* Mot. to Amend (Dkt. 13).)  Matthew filed his

verified amended complaint on May 13, 2022.  (Am. Compl.)  In that amended

complaint, he removed any reference to the Doe Defendants and did not assert any new

claims against David.  (*Id.*)  David answered the amended complaint and reasserted his

counterclaim on May 31, 2022.  (Am. Ans. (Dkt. # 18).)  He filed this motion for

summary judgment on October 19, 2022.  (Mot.)

### III.    ANALYSIS

David seeks the dismissal of all of Matthew's claims against him; reasonable

attorneys' fees and costs pursuant to RCW 4.84.185 on the ground that this case is

"frivolous and advanced without reasonable cause"; and summary judgment in his favor

on his counterclaim.  (*See generally* Mot.)  He also moves to strike portions of Mr. Olla's

declaration.  (*See* Reply at 1; *id.*, Ex. ("Objections").)  Matthew, meanwhile, opposes

David's motion and asks the court to impose monetary sanctions on David and his

attorney for filing David's motion "in bad faith."  (*See generally* Resp.)  Below, the court

considers David's motion to strike, and then turns to David's motion for summary

judgment and Matthew's request for sanctions.

### A.    David's Motion to Strike

David moves to strike certain statements in Mr. Olla's affidavit as hearsay.  (Reply

at 1.)  Specifically, David objects to portions of Mr. Olla's affidavit that describe

telephone calls between Matthew and David's sister, Pamela Katz Alston (Olla Aff.

1    ¶ 16), and between Matthew and David's former girlfriend, Dr. Shirley A. Leto (*id.*

2    ¶ 17).[5]

3         As David correctly points out, hearsay is an out-of-court statement that a party

4    offers to prove the truth of the matter asserted in the statement.  Fed. R. Evid. 801(c).

5    Hearsay statements that do not fit into a hearsay exception are not admissible evidence,

6    and cannot, therefore, be used to oppose a motion for summary judgment.  Fed. R. Evid.

7    802; Fed. R. Civ. P. 56(c)(4).  Here, Matthew seeks to admit statements by Mr. Olla in

8    which he recounts statements by Ms. Alston and Dr. Leto—neither of whom have

9    provided their own affidavits in this matter.  (*See* Olla Aff. ¶¶ 16-18.)  He further seeks to

10   admit those statements for the truth of the matter asserted:  that David told them that he

11   had no intention of reconveying the Property and that he "intended to wait until

12   [Matthew] died."  (*See* Resp. at 4, 8, 15 (discussing Ms. Alston's and Dr. Leto's

13   statements).)  No hearsay exception allows for the admission of those statements.  *See*

14   Fed. R. Evid. 803, 804.  Accordingly, the court GRANTS David's motion to strike the

15   portions of Mr. Olla's affidavit in which he recounts Matthew's conversations with Ms.

16   Alston and Dr. Leto.

17        David does not expressly object to the descriptions of the calls with Ms. Alston

18   and Dr. Leto that Matthew included in his verified amended complaint and cited in his

19   response.  (*See* Reply at 1; Am. Compl. ¶¶ 19-21; *see also* Resp. at 4, 8, 15 (citing the

20

21       [5] David also moves to strike a portion of Mr. Olla's declaration in which he describes a
     statement by Bernard Katz.  (*See* Objections ¶ 11.)  Because Matthew does not rely on this
     statement in his response (*see generally* Resp.), the court does not consider David's motion to

22   strike it.

1  amended complaint and discussing Ms. Alston's and Dr. Leto's statements).)  The

2  statements Matthew discusses in his amended complaint and his response, however, are

3  the same statements that Mr. Olla described in his affidavit; and Matthew relies on the

4  statements for the truth of the matters asserted in them.  (*Compare* Am. Compl. ¶¶ 19-21;

5  *with* Olla Aff. ¶¶ 16-17.)  The statements as recounted in Matthew's amended complaint,

6  therefore, are also hearsay and inadmissible.  *See* Fed. R. Evid. 801(c), 802.  Because

7  only admissible evidence may be used to oppose a motion for summary judgment, Fed.

8  R. Civ. P. 56(c)(4), the court does not rely on the statements by Ms. Alston and Dr. Leto

9  in considering David's motion.

10  **B.**    **Summary Judgment Standard**

11        Under Rule 56 of the Federal Rules of Civil Procedure, either "party may move

12  for summary judgment, identifying each claim or defense—or the part of each claim or

13  defense—on which summary judgment is sought."  Fed. R. Civ. P. 56.  Summary

14  judgment is appropriate if the evidence, when viewed in the light most favorable to the

15  non-moving party, demonstrates "that there is no genuine dispute as to any material fact

16  and the movant is entitled to judgment as a matter of law."  *Id.*; *see Celotex Corp. v.*

17  *Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if "the evidence is such that a

18  reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty*

19  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the

20  outcome of the suit under the governing law."  *Id.*

21        The moving party bears the initial burden of showing that there is no genuine

22  dispute of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477

1    U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial,

2    it nevertheless "has both the initial burden of production and the ultimate burden of

3    persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz*

4    *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of

5    production, the moving party must either produce evidence negating an essential element

6    of the nonmoving party's claim or defense or show that the nonmoving party does not

7    have enough evidence of an essential element to carry its ultimate burden of persuasion at

8    trial." *Id.*  If the moving party meets its burden of production, the burden then shifts to

9    the nonmoving party to identify specific facts from which a factfinder could reasonably

10   find in the nonmoving party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at

11   250.  "An affidavit or declaration used to support or oppose a motion must be made on

12   personal knowledge, set out facts that would be admissible in evidence, and show that the

13   affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P.

14   56(c)(4).

15        The court is "required to view the facts and draw reasonable inferences in the light

16   most favorable to the [nonmoving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

17   The court may not weigh evidence or make credibility determinations in analyzing a

18   motion for summary judgment because these are "jury functions, not those of a judge."

19   *Anderson*, 477 U.S. at 249-50.  Nevertheless, the nonmoving party "must do more than

20   simply show that there is some metaphysical doubt as to the material facts . . . . Where

21   the record taken as a whole could not lead a rational trier of fact to find for the

22   nonmoving party, there is no genuine issue for trial."  *Scott*, 550 U.S. at 380 (internal

1   quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

2   475 U.S. 574, 586-87 (1986)).

3     The court must construe pleadings by *pro se* litigants liberally.  *See Wilk v. Neven*,

4   956 F.3d 1143, 1147 (9th Cir. 2020).  Conclusory, self-serving statements, however, are

5   insufficient to create a genuine dispute of material fact.  *F.T.C. v. Publishing Clearing*

6   *House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

7   **C.** **Matthew's Claims against David**

8     Below, the court discusses whether David is entitled to summary judgment on

9   Matthew's claims against him, then considers whether David should be awarded the

10  attorney's fees and costs he incurred in defending this matter.

11    <u>1.</u> <u>Statute of Limitations on Claims Based on Alleged Fraud</u>

12    David first contends that Matthew's claims in which he seeks to set aside the Quit

13  Claim Deed on the basis of fraud are barred as a matter of law by the statute of

14  limitations.  (Mot. at 5-7.)  A three-year statute of limitations applies to claims "for relief

15  upon the ground of fraud," including actions to set aside a conveyance of real property

16  based on an allegation of fraud.  RCW 4.16.080(4); *Aberdeen Fed. Sav. & Loan Ass'n v.*

17  *Hanson*, 794 P.2d 1322, 1324 (Wash. Ct. App. 1990) (citing *Strong v. Clark*, 352 P.2d

18  183, 184 (Wash. 1960)); *see Kiener v. Hood*, 218 P. 1, 1 (Wash. 1923) (noting that an

19  action to set aside a deed on the ground that it was fraudulently obtained must be brought

20  within three years of discovery of fraud).  The statute of limitations begins to run when

21  there is "discovery by the aggrieved party of the facts constituting the fraud."  RCW

22  4.16.080(4).  A plaintiff has constructive notice if he could have discovered the facts

1   constituting the fraud by examining the record and if "ordinary prudence and business

2   judgment" required examination of the record.  *Aberdeen Fed. Sav. & Loan Ass'n*, 794

3   P.2d at 1324 (quoting *Irwin v. Holbrook*, 73 P. 360, 363 (Wash. 1903)).  "When an

4   instrument involving real property is properly recorded, it becomes notice to all the world

5   of its contents."  *Strong*, 352 P.2d at 184.  Accordingly, "[w]hen the facts upon which the

6   fraud is predicated are contained in a written instrument placed on the public record,

7   there is constructive notice of its contents, and the statute of limitations begins to run at

8   the date of the recording of the instrument."  *Id.*

9          Several of Matthew's claims include allegations that David fraudulently obtained

10   the Quit Claim Deed.  In his first cause of action for a declaratory judgment, Matthew

11   alleges that the "secured loan contract" is "voidable based upon it having been

12   fraudulently induced by [David]."  (Am. Compl. ¶ 23.)  In his second cause of action for

13   "fraud and deceit," he alleges that  "[b]ut for [David's] fraud in the inducement of

14   [Matthew] to enter into the secured loan contract, [Matthew] would not have pledged the

15   deed to the [Property] as collateral for an extension of the parties' loan contract terms"

16   and that David "secured [Matthew's] transfer of the deed to the [Property] to him only by

17   means of his fraud and deceit upon [Matthew] and but for which [Matthew] would still

18   possess title to the [Property]."  (*Id.* ¶¶ 25-26.)  Finally, in his third cause of action for

19   quiet title, Matthew alleges that David:

20          is not the rightful owner of the [Property] since he acquired title thereto from
        [Matthew] by means of fraud and deceit, as [David] never had any intention
21        of returning or otherwise transferring the deed to the [Property] back to
        [Matthew], as evidenced by [David's] unwillingness to execute the written
22        contract he both drafted and presented to [Matthew] with contractual terms

for reconveyance of title back to [Matthew] that [Matthew] was ready, willing and able to meet.

(Am. Compl. ¶ 29.)  Matthew asserts that he signed the Quit Claim Deed in error and did

not intend to quit claim his interests in the Property to David.  (Resp. at 1-2.)  He argues

that David "falsely obtained" the Quit Claim Deed in 2016 and "accepted the resulting

[Quit Claim Deed] fully aware that he was only to have received a second deed of trust

only as security for the" $50,000 loan.  (*Id.* at 6.)  Matthew further states that he only

learned of David's "fraudulent concealment" of his intent to exploit Matthew's erroneous

grant of the Quit Claim Deed in December 2021, when David refused to further discuss

the terms of their agreement that Matthew would repay the $50,000 loan from his estate.

(Resp. at 8; *see* Am. Compl. ¶ 16.)

The court concludes that the record, viewed in the light most favorable to

Matthew, shows that he had actual and constructive notice of the Quit Claim Deed's

contents in May and June 2016.  It is undisputed that Matthew's attorney prepared the

Quit Claim Deed and REETA without any involvement by David; that Matthew signed

both documents; that the deed contained the legal description of the Property and

provided that it "convey[ed] and quit claim[ed]" to David all of Matthew's "right, title

and interest" in the Property; and that the deed was recorded on June 1, 2016.  (*See* Quit

Claim Deed; REETA.)  Thus, Matthew should have been aware no later than June 1,

2016 that the Quit Claim Deed conveyed all of his interests in the Property to David,

instead of providing only a lien against the Property or a deed of trust.  *Strong*, 352 P.2d

at 184.  As a result, the three-year statute of limitations for an action to set aside a quit

1    claim deed on the basis of fraud expired no later than June 1, 2019.  *See* RCW

2    4.16.080(4).  Because Matthew did not file this action until January 20, 2022, his

3    declaratory judgment, fraud, and quiet title claims seeking to set aside the Quit Claim

4    Deed on the basis of fraud are barred by the statute of limitations.  The court GRANTS

5    David's motion for summary judgment on these claims.

6        2.    Fraud and Deceit

7        David also asserts that Matthew's fraud claims must be dismissed because (1) "a

8    promise to do something in the future cannot serve as the basis of a fraud claim" and

9    (2) Matthew cannot otherwise produce prima facie evidence supporting the elements of

10   his claim.  (Mot. at 8-9.)

11       To survive summary judgment on a claim of fraud, a plaintiff must show proof of

12   all nine essential elements of the claim:

13       (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the
         speaker's knowledge of its falsity, (5) the speaker's intent that it be acted
14       upon by the person to whom it is made, (6) ignorance of the falsity on the
         part of the person to whom the representation is addressed, (7) the latter's
15       reliance on the truth of the representation, (8) the right to rely upon it, and
         (9) consequent damage.
16

17   *Elcon Constr., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012).  Each element

     must be proven by clear, cogent, and convincing evidence.  *Id.*
18

19       Because the court has dismissed Matthew's claims that David fraudulently

20   obtained the Quit Claim Deed in 2016 as barred by the statute of limitations, *see supra*

     Section III.C.1, the court addresses here only Matthew's claim that David engaged in
21
     fraud in 2021 with respect to the parties' agreement that David would reconvey the
22

property in exchange for Matthew providing for repayment of the loan plus an additional $50,000 bequest from his estate.  (*See* Am. Compl. ¶ 27, alleging that "but for [David's] fraud and deceit that the deed would be conveyed back to [Matthew] in December 2021, [Matthew] would not be suffering continued loss of rental and other income to be derived from ownership of the [Property].").)

The court agrees with David that Matthew has not met his burden on summary judgment to produce evidence supporting the elements of his claim that David engaged in fraud with respect to his 2021 promise to reconvey.  The Washington Supreme Court's decision in *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996), is instructive.  In that case, the petitioner asserted that a letter from the respondent promising to grant certain mortgages against real property and to record a deed of trust after clearing title constituted a misrepresentation of existing fact that would support a claim of fraud.  *Id.* The Court disagreed, holding that the letter "contained a promise of future performance, and not a representation of *existing* fact" and thus did not satisfy the first element of the petitioner's fraud claim.  *Id.* (emphasis in original).  Here, Matthew's fraud claim is based on his allegation that David lied when he represented that he would reconvey the Property if Matthew agreed to provide for him in his estate.  (*See* Am. Compl. ¶ 27; Resp. at 10 (stating David "in mid-2021 fraudulently induced then 91-year-old [Matthew] that he would finally reconvey back to him equitable title to the [Property] provided he take the additional step of amending his Last Will & Testament to Defendant").)  As in *Stiley*, David's representation was a promise of future performance, rather than a representation of an existing fact.  As a result, that statement does not satisfy the first element of

1    Matthew's fraud claim.  Because Matthew has not identified any other misrepresentation

2    on which he bases his claim, the court GRANTS David's motion for summary judgment

3    on Matthew's claim that David engaged in fraud in 2021 with respect to his failure to

4    reconvey the Property.

5         3.    Statute of Frauds

6         David argues that Matthew's claims relating to the conveyance of the Property are

7    barred for failure to comply with Washington's Statute of Frauds.  (Mot. at 7-8.)  Because

8    the court has dismissed Matthew's claims that the 2016 conveyance of the Property and

9    David's 2021 failure to reconvey the property were fraudulent, *see supra* Sections

10   III.C.1-2, the court interprets this argument as directed to Matthew's claims for (1) a

11   declaratory judgment "that the parties' secured loan contract is void as an unconscionable

12   contract for imposing terms so onerous and unconscionable on Plaintiff or for lack of

13   adequate consideration furnished by the Defendant"  (Am. Compl. ¶ 23) and (2) breach of

14   the oral agreement that David would reconvey the Property to Matthew in exchange for

15   Matthew's agreement to either repay the loan or provide for repayment plus $50,000 in

16   his estate (*see* Am. Compl. ¶ 31[6]; *see also* Resp. at 11 (stating Matthew is "suing to

17   enforce [David's] promise to reconvey")).

18

19

20        [6] Specifically, Matthew alleges that "[David] has breached the terms of his oral
     agreement to transfer title to the [Property] back to [Matthew], and [Matthew] therefore seeks an
21   Order of this Court granting him, as against [David], as in the alternative to voiding the parties'
     secured loan contract, the total fees and costs of suit as well as lost rental income from the time
22   that [David] has unfairly withheld title to the [Property] as in breach of his oral agreement with
     [Matthew] to do so."  (*Id.*)

The statute of frauds requires that "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed." RCW 64.04.010; *Key Design Inc. v. Moser*, 983 P.2d 653, 657-58, *as amended*, 993 P.2d 900 (Wash. 1999). A "conveyance" for purposes of the statute includes "every written instrument by which any estate or interest in real property is created, transferred, mortgaged or assigned or by which the title to any real property may be affected." RCW 65.08.060(3). "[E]very contract or agreement involving a sale or conveyance of platted real property sale must contain . . . the description of such property by the correct lot number(s), block number, addition, city, county, and state." *Key Design Inc.*, 983 P.2d at 658 (quoting *Martin v. Siegel*, 212 P.2d 107, 110 (Wash. 1949)).

Matthew argues that David "extended the unsecured [loan] to [Matthew] and then, more than four (4) years later, in lieu of ever timely suing for breach of contract by [Matthew's] failure to repay by that date, successfully convinced [Matthew] into granting him security for the [loan]." (Resp. at 11.) He further asserts that "all the writings between the parties fully establish that [David] was in possession of and had legal title to the [Property] on the basis of the [loan]." (*Id.*) Matthew concludes by conceding that David "had through [Matthew's] error mistake become owner of the [Property], which under the circumstances is a most unconscionable result which Equity should not sustain." (*Id.*) As a result, according to Matthew, "there can be no summary judgment on the basis of the Statute of Frauds" and David is "openly misrepresenting [Matthew's]

1   claims inter alia for Declaratory Relief . . . Quiet Title and . . . for Fraud and Deceit."

2   (*Id.* (citing Am. Compl.).)

3          Nothing in Matthew's arguments or evidentiary submissions, however, addresses

4   the requirements of the statute of frauds.  Because the parties' purported agreements in

5   2016 and 2021 related to conveyances of property—that is, both agreements involved

6   transactions in which an "interest in real property" would be "transferred" or in which the

7   title to that property would "be affected"—the statute of frauds requires that the

8   agreements be in writing and include an adequate legal description of the Property.  To

9   survive summary judgment, therefore, Matthew must provide evidence of writings

10  memorializing those agreements that comply with the statute of frauds.  Because

11  Matthew has not done so, the court concludes that David is entitled to summary judgment

12  on Matthew's claims for a declaratory judgment that the purported 2016 secured loan

13  agreement is void and for breach of the purported 2021 oral agreement to reconvey the

14  property.[7]

15         4.     Elder Abuse

16         David seeks summary judgment on Matthew's elder abuse claim on the ground

17  that Matthew is not a "vulnerable adult" and cannot show that David committed any

18  "financial exploitation" as defined in Washington's elder abuse statute, the Abuse of

19  Vulnerable Adults Act, chapter 74.34 RCW ("AVAA").  (Mot. at 9-11.)

20

21         [7] The court notes that Matthew's claim for a declaratory judgment that the 2016 oral
    agreement is void is also barred by the three-year statute of limitations for actions arising from
22  an oral contract.  RCW 4.16.080(3).

ORDER - 18

Matthew alleges that David:

> has been aware of [Matthew's] heart condition[,] . . . advanced age and
> anxiety, and yet chose to defraud [Matthew] or otherwise misrepresent
> material facts to [Matthew] in a way that has compounded such mental and
> physical handicaps and frailties of [Matthew] and has also resulted in
> upending [Matthew's] financial stability vis a vis the [Property].

(Am. Compl. ¶ 38.)  He further alleges that David:

> has ruthlessly chosen to do so even though [Matthew] has at all relevant times
> has [sic] continually made payment for the mortgage and real estate taxes
> owing on the [Property].  At all relevant times, [David] has known that the
> anxiety he exploits in [Matthew] to secure financial gain for himself could
> cause the aneurysm in [Matthew's] chest to explode.

(*Id.* ¶ 39.)  In his response to David's motion, Matthew adds that he has a cyst on his

brain and emphysema; that he cannot walk on his own and is "ambulatory only by

mechanical wheel chair"; and that he "relies on four caregivers, three of whom are

licensed and provided as a benefit from the [VA]."  (Resp. at 12-13.)  He does not dispute

David's assertion that the AVAA governs his claim.  (*See generally* Resp.)

   The AVAA was enacted to protect vulnerable adults from abuse, neglect, financial

exploitation, or abandonment.  RCW 74.34.005(1).  A "vulnerable adult" includes a

person "[s]ixty years of age or older who has the functional, mental, or physical inability

to care for [themselves]."  RCW 74.34.020(22)(a).  To protect vulnerable adults, the

statute permits a vulnerable adult or an "interested person" to file a petition for a

vulnerable adult protection order.  RCW 74.34.110.  The statute also provides a private

right of action for:

> a vulnerable adult who has been subjected to abandonment, abuse, financial
> exploitation, or neglect either while residing in a facility or in the case of a

person residing at home who receives care from a home health, hospice, or home care agency, or an individual provider.

RCW 74.34.200(1).  The private right of action, however, is only available:

where the defendant is or was a corporation, trust, unincorporated association, partnership, administrator, employee, agent, officer, partner, or director of a facility, or of a home health, hospice, or home care agency licensed or required to be licensed under chapter 70.127 RCW, as now or subsequently designated, or an individual provider.

*Id.*  "Facilities" under the statute include assisted living facilities, nursing homes, adult family homes, soldiers' homes, residential habilitation centers, or other facilities licensed by the Washington State Department of Social and Health Services ("DSHS").  RCW 74.34.020(6), (5).  An "individual provider" is "a person under contract with [DSHS] to provide services in the home under chapter 74.09 or 74.39A RCW."  RCW 74.34.020(10).

The court observes that even if Matthew qualifies as a vulnerable adult under the AVAA, his claim must fail on the current record because Matthew submits no evidence that David is among the class of defendants who can be sued for financial exploitation under that statute.  (*See generally* Resp.; Am. Compl.)  Matthew has submitted no evidence that David is affiliated with a licensed facility or with a home health, hospice, or home care agency; nor is there any evidence that David is an "individual provider" within the meaning of the AVAA.  David has not, however, moved for summary judgment on this ground.

Under Federal Rule of Civil Procedure 56(f)(2), a court may grant a motion for summary judgment on grounds not raised by a party after giving notice and a reasonable

1    time to respond.  Fed. R. Civ. P. 56(f)(2).  Accordingly, the court ORDERS Matthew to

2    SHOW CAUSE why the court should not grant summary judgment to David on

3    Matthew's elder abuse claim because David is not among the class of defendants who

4    may be sued for financial exploitation under the AVAA.

5        5.    Tortious Interference with Business Expectancy[8]

6        Finally, David argues that Matthew cannot establish a prima facie case of tortious

7    interference with a business expectancy.  (Mot. at 11-13.)  Specifically, he contends that

8    he is entitled to summary judgment on Matthew's tortious interference claim because

9    (1) "[t]he rental income Matthew claims he could have been generating was for the rental

10   of the Property, which does not have an adequate supply of heat, water, and hot water to

11   be habitable" and Matthew "lacks the financial wherewithal to restore the Property to a

12   habitable condition" and (2) any claim Matthew may have for damages is "speculative

13   and cannot be proven with reasonable certainty."  (*Id.* at 12-13.)

14   A claim for tortious interference with a business expectancy requires the plaintiff

15   to prove:

16       (1) the existence of a valid business expectancy, (2) that the defendant had
         knowledge of that expectancy; (3) an intentional interference inducing or
17       causing termination of the expectancy; (4) that the defendant interfered for
         an improper purpose or used improper means; and (5) resultant damage.
18

19

20   [8] Although Matthew refers to his claim as one for intentional interference with
     prospective economic advantage in his amended complaint (*see* Am. Compl. at 13), he does not
21   dispute David's characterization of the claim as tortious interference with a business expectancy
     (*see* Resp. at 13) and courts treat the claims interchangeably (*see, e.g.*, *Allstate Ins. Co. v.*
     *Tacoma Therapy, Inc.*, No. C13-5214RBL, 2014 WL 1494100, at *5 (W.D. Wash. Apr. 16,
22   2014)).

1    *Greensun Group, LLC v. City of Bellevue*, 436 P.3d 397, 405 (Wash. Ct. App. 2019)

2    (internal ellipses, quotation marks and citation omitted).  A "valid business expectancy

3    includes any prospective contractual or business relationship that would be of pecuniary

4    value."  *Id.* (quoting *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp. Inc.*,

5    52 P.3d 30, 33 (Wash. Ct. App. 2002)).  A plaintiff need only show that his "future

6    business opportunities are a reasonable expectation and not merely wishful thinking."  *Id.*

7    (quoting *Life Designs Ranch, Inc. v. Sommer*, 364 P.3d 129, 138 (Wash. Ct. App. 2015)).

8    In addition, "a party must prove a claim of damages with reasonable certainty."  *Id.* at

9    409 (citing *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 315 P.3d 1143, 1150

10   (Wash. Ct. App. 2013)).  Thus, the party defending against a summary judgment motion

11   "must produce evidence sufficient to support its claim."  *Id.* (citing *Mut. of Enumclaw*,

12   315 P.3d at 1150).  "Evidence of damage is sufficient if it affords a reasonable basis for

13   estimating loss and does not subject the trier of fact to mere speculation or conjecture."

14   *Id.* (quoting *Mut. of Enumclaw*, 315 P.3d at 1150); *see also id.* (holding that plaintiff

15   produced sufficient evidence of damage caused by interference with its plans to open a

16   recreational marijuana store where it produced the profits generated by its original store,

17   which was similar in size and amenities to its planned store).

18          Matthew alleges that David:

19          has knowingly withheld title to the [Property], in full knowledge that
             [Matthew] is paying for all mortgage carrying costs and real estate taxes and
20          is refusing to reconvey title to the [Property] despite knowing this and that
             [Matthew] could be generating rental income on the [Property].  [David] is
21          recklessly doing so purely for his own financial gain at [Matthew's] expense.

22

(Am. Compl. ¶ 32.)  Matthew further alleges that "[w]ithout rental income from the [Property], [he] has been made economically devastated purposely by David."  (*Id.* ¶ 17.)  In response to David's motion, Matthew states only that he has been "deprived of years of rental income on the [Property]" and that David "has complete knowledge of [Matthew's] record company sales business and [Matthew's] tea packaging business that [David's] alleged unlawful actions have prevented [Matthew] from financing by recourse to [s]econdary financing on the [Property]."  (Resp. at 13.)  Matthew has not, however, directed the court to any evidence that, viewed in the light most favorable to him, could lead a factfinder to conclude that Matthew had a valid business expectancy in receiving rental income from the Property, nor has he produced any evidence of the damages he suffered as a result of David's alleged interference with his ability to receive rental income from the Property or to refinance the Property.  For these reasons, the court agrees with David that summary judgment on Matthew's tortious interference with business expectations claim is appropriate.  The court GRANTS David's motion for summary judgment on this claim.

    6.    Intentional Infliction of Emotional Distress

    Although Matthew also alleges a claim for intentional infliction of emotional distress in his amended complaint (*see* Am. Compl. ¶¶ 33-36), David has not moved for summary judgment on that claim (*see generally* Mot.).  Nevertheless, under Federal Rule of Civil Procedure 56(f)(2), a court may grant a motion for summary judgment on grounds not raised by a party after giving notice and a reasonable time to respond.  Fed. R. Civ. P. 56(f)(2).  For the following reasons, the court orders Matthew to show cause

1    why it should not grant David summary judgment on his intentional infliction of

2    emotional distress claim.

3         Intentional infliction of emotional distress requires proof of the following

4    elements:  "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of

5    emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Trujillo*

6    *v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1110 (Wash. 2015) (quoting *Lyons v. U.S. Bank.*

7    *Nat. Ass'n*, 336 P.3d 1142, 1151 (Wash. 2014)).  To prove "extreme and outrageous

8    conduct," it is not enough to show that the defendant acted with tortious or criminal

9    intent, intended to inflict emotional distress, or even acted with malice.  *Grimsby v.*

10   *Samson*, 530 P.2d 291, 295 (Wash. 1975).  Rather, the plaintiff must show that the

11   conduct was "so outrageous in character, and so extreme in degree, as to go beyond all

12   possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

13   civilized community." *Trujillo*, 355 P.3d at 1110 (quoting *Lyons*, 336 P.3d at 1151).  The

14   conduct must be such that "the recitation of the facts to an average member of the

15   community would arouse his resentment against the actor and lead him to exclaim

16   'Outrageous!'" *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003) (quoting *Reid v.*

17   *Pierce Cnty.*, 961 P.2d 333, 337 (Wash. 1998)).  Indeed, "[t]he law intervenes only where

18   the distress inflicted is so severe that no reasonable person could be expected to endure

19   it." *Saldivar v. Momah*, 186 P.3d 1117, 1130 (Wash. Ct. App. 2008) (citing Restatement

20   (Second) of Torts § 46 cmt. j, at 77 (Am. Law Inst. 1965)).  Although the question of

21   whether conduct is sufficiently outrageous is ordinarily for the jury, it is "initially for the

22   court to determine if reasonable minds could differ on whether the conduct was

1    sufficiently extreme to result in liability." *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash.

2    1989).

3        Matthew alleges that David "knowingly inflicted emotional distress upon

4    [Matthew] by way of his conduct in relation to repayment of the original loan he made to

5    [Matthew] and has done so in order to retain title to the [Property] for personal gain

6    outrageously out of proportion to the loan amount, somehow in the hopes that [Matthew]

7    will die, and title be retained by [David]." (Am. Compl. ¶ 34.) He alleges that "[a]t all

8    relevant times, [David] has been fully aware of [Matthew's] anguish, stress and anxiety

9    and how his unlawful actions of fraud and deceit could prove deleterious to [Matthew's]

10    mental health." (*Id.* ¶ 35.) Finally, he alleges that David's

11        actions are also retributive in nature, designed to punish [Matthew] for past
         disputes with the heirs under the Estate of Bernard Katz for [Matthew's]
12        efforts to assist in following through on claims in New Jersey district court
         litigation which survived Bernard Katz but which Bernard Katz's children
13        do not wish to resolve, and therefore have been in part purposely designed to
         inflict pain in such latter regard.
14
     (*Id.* ¶ 36.) Elsewhere in his amended complaint, Matthew also alleges that David
15
     "engaged in fraudulent misrepresentation to 92-years-old [Matthew] that he would
16
     [reconvey the Property], which actions also caused [Matthew] severe emotional distress,"
17
     (*id.* ¶ 4) and that "without rental income from the [Property] . . . [Matthew] has been
18
     "economically devastated purposely by [David]," also causing "severe emotional
19
     distress" (*id.* ¶ 17).
20
         The court has concluded that David is entitled to summary judgment on Matthew's
21
     claims for fraud and tortious interference with business expectancy. *See supra* Sections
22

1    III.C.1-3, 5.  As a result, the conduct that Matthew alleges forms the basis of his claim for

2    intentional infliction of emotional distress is not, as Matthew alleges, unlawful.

3    Furthermore, there is no evidence in the record of communications or interactions

4    between David and Matthew between June 2016 and approximately August 2021, and

5    nothing in the evidence Matthew has submitted to the court indicates that David's

6    conduct in late 2021 was "so outrageous in character, and so extreme in degree, as to go

7    beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

8    intolerable in a civilized community." *Trujillo*, 355 P.3d at 1110.  As a result, the court

9    preliminarily concludes that reasonable minds could not disagree that the conduct that

10   forms the basis of Matthew's intentional infliction of emotional distress claim is not

11   "sufficiently extreme" as to subject David to liability.  *Dicomes*, 782 P.2d at 1012; (*see*

12   Am. Compl. ¶¶ 33-36).  Accordingly, the court ORDERS Matthew to SHOW CAUSE

13   why the court should not also grant summary judgment to David on his intentional

14   infliction of emotional distress claim.  *See* Fed. R. Civ. P. 56(f)(2).

15          7.     Fees and Costs Pursuant to RCW 4.84.185

16          David asserts that he is entitled to payment of the reasonable attorney's fees and

17   costs he incurred in defending this matter because, he contends, this litigation is

18   "frivolous and advanced without reasonable cause" under RCW 4.84.185.  (Mot. at 13.)

19   That statute provides, in relevant part:

20          In any civil action, the court having jurisdiction may, upon written findings
            by the judge that the action, counterclaim, cross-claim, third party claim, or
21          defense was frivolous and advanced without reasonable cause, require the
            nonprevailing party to pay the prevailing party the reasonable expenses,

22

including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense.

RCW 4.84.185.  For a court to award fees and costs under this statute, it must determine that the entire lawsuit is "frivolous and advanced without reasonable cause," rather than just one or more claims therein.  *Kilduff v. San Juan Cty.*, 453 P.3d 719, 728 (Wash. 2019) (citing *Biggs v. Vail*, 830 P.2d 350, 352 (Wash. 1992)).  "A frivolous action is one that cannot be supported by any rational argument on the law or facts."  *Hanna v. Margitan*, 373 P.3d 300, 308 (Wash. Ct. App. 2016) (quoting *Rhinehart v. Seattle Times, Inc.*, 798 P.2d 1155, 1160 (Wash. Ct. App. 1990)).

Although the court has determined that David is entitled to summary judgment on nearly all of Matthew's claims, the court cannot conclude that Matthew's lawsuit as a whole is frivolous and advanced without reasonable cause.  The court DENIES David's request for an award of fees and costs pursuant to RCW 4.84.185.

## D.   David's Counterclaim

In his answer to Matthew's amended complaint, David asserts a counterclaim for "quiet title to the [Property] or repayment of [the] loan."  (Am. Ans. at 10-11.)  In his motion, however, he argues that if the court orders David to reconvey the Property to Matthew, it would be unjust for Matthew to retain the benefit of the $50,000.  (Mot. at 13-14.)  The court understands, therefore, that David's motion for summary judgment on his counterclaim is conditional on the court ordering David to reconvey the Property. Because the court has dismissed Matthew's claims related to reconveyance of the

1   property, the court DENIES David's motion for summary judgment on his counterclaim

2   as moot.

3   **D.    Matthew's Request for Sanctions**

4          Matthew seeks a monetary sanction of $10,000 against David and his attorney.

5   (Resp. at 16.)  He argues that there is "overwhelming evidence" that David and his

6   attorney filed David's motion for summary judgment "in bad faith as calculated for delay

7   and bring further stress upon Plaintiff for which this Opposition has been exceedingly

8   difficult to dra[f]t and by its resort fraud upon the court." (*Id.*)  The court's scheduling

9   order, however, expressly provides an opportunity for the parties to file dispositive

10  motions, such as motions for summary judgment, after the completion of discovery.  (*See*

11  Sched. Order (Dkt. # 12) (setting a dispositive motions deadline of October 19, 2022));

12  *see also* Fed. R. Civ. P. 56(a) (allowing either party to move for summary judgment).  It

13  was fully within David's rights as a litigant to move for summary judgment, and there is

14  nothing in David's filings that would lead the court to conclude that he or his attorney

15  filed the motion in bad faith.  Therefore, the court DENIES Matthew's request for

16  monetary sanctions.

17                          **IV.    CONCLUSION**

18         For the foregoing reasons, the court ORDERS as follows:

19         1.     The court GRANTS David's motion for summary judgment on Matthew's

20  claims for a declaratory judgment; fraud and deceit; quiet title; and tortious interference

21  with business expectancy.  These claims are DISMISSED with prejudice;

22

1    2.    The court DENIES David's motion for summary judgment on his

2    counterclaim as moot;

3    3.    The court DENIES David's request for attorney's fees and costs pursuant to

4    RCW 4.84.185;

5    4.    The court DENIES Matthew's request for monetary sanctions; and

6    5.    The court ORDERS Matthew to SHOW CAUSE by no later than

7    **December 7, 2022**, why the court should not grant summary judgment to David on

8    Matthew's elder abuse and intentional infliction of emotional distress claims.  Matthew's

9    submission shall not exceed six (6) pages in length.  Matthew may also submit a

10   declaration or affidavit in support of his submission.  David may file a reply to Matthew's

11   submission, of no more than four (4) pages in length, by no later than **December 13,**

12   **2022**.

13        Dated this 28th day of November, 2022.

14

15   _____

16   JAMES L. ROBART
     United States District Judge

17

18

19

20

21

22

ORDER - 29